Douglass, J.
This action is based upon a policy of insurance of the defendant company dated Februaryy 15th, 1866, insuring the life of the husband for the benefit of the wife, if living, and if not living, then of her children, or their guardian for their use, with a guaranty for a paid-up policy endorsed on the policy denominated “note”.
I will read the note. The note is: “On the surrender ■of this policy” — giving the number — -“duly receipted, and without previous change in the mode of paying premiums, a paid-up policy on the life” — then giving the name —“will be issued for an equitable sum which, with additions for two years, shall exceed two hundred dollars, and after payments for five years, shall exceed five hundred dollars”, and so on.
A further provision of the policy that is important and short, is:
. “If the said premiums shall not be paid on or before, the ■day before mentioned for the payment thereof at the office of the company in the city of New York, unless otherwise ■expressly agreed in writing, or to agents when they produce receipts signed by the president and secretary, in every such case the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine.”
“Third. In every case where this policy shall cease and determine and be null and void, all payments thereon shall be forfeited to this company.”
This policy was issued in February, 1866, Premiums •were paid for five years and three months — it was a regular ten year policy, — and this carried it up to February, 1871; and the insured died in 1894. .
*538 It is argued here that the guaranty for a paid-up policy, this denominated “note”, is a separate contract. We have-examined this carefully, and we cannot subscribe to this, view. We think that this note and the face of the policy, ■ — -it is all one paper, — -is one contract; that they must be-construed together.
The first objection that is seriously urged is the admission of the evidence of Hickock. The argument is that he-was not competent to testify on the subject matter about which inquiry was made as to what was the custom of the-company during certain years, and that that was not germain to the question in hand. We think that is true, but no answers were elicited, and there could be no prejudice — those that were elicited could not be prejudicial. We examined, it in that view very carefully.
And an objection was made to the deposition of one Pinney, I believe. The objection as made was one that could-not avail. No specific objections were made; there were-some preliminary questions that were competent and proper, and that kind of an exception on a general objection to the entire deposition or testimony of the party, could not avail her.
But if this is not well taken, the evidence of both these-parties could not affect the question presented here, find that is as to the weight of the evidence in this case. This-case was submitted to the court without the intervention of a jury, and if all of their evidence had been omitted in this-case,it would not have affected our view.
Now it is said that there was a demand made for a paid-up policy. It will be remembered that five years’ and one-quarter premiums had been paid on this ten years’ policy running from 1866 to 1871, and that a demand was made-of the soliciting agent. That is in proof; there is such evidence.
The soliciting agent has certain duties to perform, and* *539 under the Ohio authorities, at least, he may bind the company in reference to what apoears to be within the apparent scope of his authority under certain circumstances. But here was an absolute provision right on the face of this policy that was notice absolute to the party that the soliciting agent had no such right. Under the testatum clause, is the following: “Agents of the company are not authorized to make, alter, or discharge contracts, or waive forefeitures”; and the receipts that these parties received showed conclusively the same fact. They had notice before them in all these ways, and however the testimony may vary on that proposition, and if a demand of the soliciting agent was established, it would not amount to a proper demand for a paid-up policy.
The conditions of the note or guaranty were not complied with in regard to receipting and surrendering the original policy. The policy was not receipted, and no offer was made to receipt it in a legal sense at this time.
Now it is claimed that this could not be done until the death of Jander in 1894, because it could not be known who the beneficiaries would be. This was argued at great length,and very ably argued: that here was a policy issued on the life of the insured, payable to the widow if she survive the husband, and if not, then payable to the children or to their guardian for their use, and it is said that because of the contingency of unborn children no such receipt could be made that would be effectual and binding, and that no such surrender could be made. This argument is pressed as the chief contention.
Now, while we think this is a close question, yet from the authorities that have been cited and that we have examined, —some New York and Ohio authorities, and notably the case in”44 Ohio St., 656, we think that this point is not well taken. The policy was payable to the wife, making her thejbeneficiary in the event that she survived her hus *540 band, which she did, and she became the sole beneficiary; and the contingency of the children having an interest was cut off as a matter of fact. That, however,could not be seen in 1871, and that is the contention; that it was payable then -to the children,or to the guardian for their use. We think that it was possible, and that it was proper and right, that the guardian should receipt the policy- — these children would lose everything if he did not act,and they would be benefited if he did act. He had no funds in his hands — there is no proof that there was anything of that kind that a guardian could have used to have paid up these premiums and kept this policy in force, and we think that it was a possible and that it was a proper thing to do to have a guardian, and have that guardian, if that be essential, do the only thing that could result in any benefit to the wards, and that was to receipt and surrender this policy and get a paid up policy. They did not avail themselves of that, and we think that was clearly contemplated by this contract. Further than that, if the wife had receipted this policy and made a surrender as required here by its terms — -she is the only beneficiary as it turns out as matter of fact — no defense could have been made by this company when she now alone prosecutes this suit as she does. The contingency in reference to the children having interests not having arisen, and she being the sole beneficiary, no defense could have been made that that was not a proper surrender.
So that, while we recognize that it is a debatable proposition, we conclude that this proposition is not well taken.
Now, the 44 Ohio St. was referred to. That was a case - where the husband sought to surrender the policy, and it • was there held that the insured could not, because of the •vested interest of the wife, surrender the policy unless he ■'was the agent of the wife, and it was clearly shown that he ■ was not, and it could not come within that claim of agency.
Now it results that no demand for a paid up policy was *541 made until after the original policy had elapsed for non-payment of premiums; and if our view be correct as to the essential point urged here,and as we have held, then the court was right in its judgment below, and its judgment should be affirmed.
W. W. Prather, for Plaintiff in Error.
Stephens & Lincoln, for Defendant in Error.